## Sioux City & St. P. R. Co. v. United States.

*(Circuit Court, N. D. Iowa, W. D.    May Term, 1888.)*

1. **Public Lands—Jurisdiction of Courts to Determine Titles.**
   The question of determining whether certain land is open for settlement or whether it has passed under a railroad grant, is one which requires the exercise of judicial power and discretion on part of the officers of the land department, with which the courts of the United States cannot interfere by injunction or otherwise.

2. **Same—Injunction—Against Department of Land Office.**
   Act Cong. March 3, 1887, providing that in certain cases suit may be brought against the United States, does not give the courts the right to interfere by injunction or otherwise with the action of the departments in matters requiring the exercise of judicial, as distinguished from ministerial, duties.

3. **Same—Bill for Injunction—Parties.**
   The persons named as seeking to pre-empt the land claimed by complainants under a railroad grant are necessary parties to a bill to enjoin the United States land-officers from allowing the proof to be made or acted upon requisite to the completion of the entries made by such persons.

In Equity.    Bill to settle title to land.    Motion for preliminary injunction.

*J. H. & C. M. Swan*, for complainant.

*T. P. Murphy*, U. S. Dist. Atty., for defendant.

SHIRAS, J.    The bill filed in this case avers that by the act of congress of May 12, 1864, there was granted to the state of Iowa every alternate section of land designated by odd numbers for 10 sections in width on each side of a projected line of railroad to be built from Sioux City to the Minnesota state line, with a provision that all lands already sold or granted by the United States within such sections should be made good by sections to be taken from the lands of the United States nearest to the designated sections; that by an act of the general assembly of the

state of Iowa, approved April 3, 1865, the lands granted to the state for the purpose named were in turn granted to the complainant company, which had undertaken the construction and operation of the line of railway designated in the act of congress; that the company proceeded with the construction of the named line of railway, and have built and maintained the same from the Minnesota state line to Le Mars, Iowa, from which point the trains all pass over the line operated by the Illinois Central Railroad Company to Sioux City. The bill further recites at length the various proceedings taken by the company, whereby it is averred it became entitled to demand and receive under the act of congress a total of 320,000 acres of land. It is also averred that there was not found within the 10-mile limit sufficient lands to make up the total quantity to which the company was entitled, so that the company became entitled to demand 133,202.20 acres as indemnity land, the same to be selected from those lying nearest to the 10-mile limit. The bill further describes specifically 720 acres of land, which it is averred are worth over $2,000 and less than $10,000, and are charged to be part of the lands of which the company has become the owner by reason of the grants already named, it being charged, however, that on the 24th day of March, 1884, the state of Iowa, disregarding the rights of complainant, illegally and wrongfully relinquished to the United States the lands in question, and that the United States, through its officers, the secretary of the interior, the commissioner of the general land-office, and the officers of the local land-office at Des Moines, Iowa, in disregard of the rights of complainant, have opened said lands to settlement and entry under the homestead, timber culture, and pre-emption laws of the United States, and have permitted certain named individuals to file pre-emption claims upon specified portions of said 720 acres of lands, and are permitting said parties to complete and perfect their proofs under said pre-emption laws, and that unless restrained, the said officers will issue receipts, patents, and other evidence of title to said parties, thereby casting a cloud upon complainant's title, and compelling complainant to bring a multiplicity of suits for the protection of its rights. Based upon this bill, a motion is now made asking the issuance of a temporary injunction restraining the commissioner of the general land-office, and the officers of the land-office at Des Moines, from allowing the proof to be made or acted upon necessary for the completion of the entries made by the parties named in the bill.

Jurisdiction in the court to entertain the bill is predicated upon the act of congress approved March 3, 1887. Whether this is one of the class of cases which come within the provisions of the act, and of which the circuit court can entertain jurisdiction, is a question which has not been discussed, and which will not be considered or determined at the present time. Assuming, however, for the purposes of the present application, that jurisdiction exists, should the motion for the temporary injunction be granted? It will be noticed that the only defendant to the bill is the United States. The individual pre-emptors, although named in the bill, are not made parties thereto, nor are the officers of the general

and local land-offices. The ultimate question presented for determination by the averments of the bill is whether the lands in question passed, under the act of congress and of the general assembly of Iowa, to the complainant, or whether they still remain part of the unappropriated lands of the United States, and therefore open to entry by pre-emption and homesteaders. This is a question which requires for its determination the examination and construction of the act of congress, of the acts of the general assembly of the state of Iowa touching these lands, and of the acts done, and work of construction performed by complainant, and the examination of the question calls for the exercise of judicial power on part of the officers of the land department. Unless the act of congress of March 3, 1887, confers the right upon the court to control in advance and direct the action of the land department, when called upon to act judicially, it is well settled that the power so to do, either by *mandamus* or injunction, does not exist. In the case of *Gaines* v. *Thompson*, 7 Wall. 347, this question was exhaustively considered, the authorities bearing thereon being fully cited. The distinction between purely ministerial acts, in regard to which the officers of the department have no discretion, and those which require the exercise of judgment and discretion, is clearly defined, and, touching the latter class of duties, it is declared that "certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts. The doctrine, therefore, is as applicable to the writ of injunction as it is to the writ of *mandamus*." See, also, *Litchfield* v. *Register*, 9 Wall. 575. On the question of the extent and character of the functions exercised by the officers of the land department in determining whether certain lands are open to entry, and whether given parties are entitled to patents therefor, see *Johnson* v. *Towsley*, 13 Wall. 72; *Shepley* v. *Cowan*, 91 U. S. 330; *Moore* v. *Robbins*, 96 U. S. 530; *Craig* v. *Leitensdorfer*, 123 U. S. 189, 8 Sup. Ct. Rep. 85. Do the provisions of the act of March 3, 1887, change the rule recognized and announced in these cases, and confer upon the courts of the United States the power to control the officers of the department in the exercise of their judgment in determining whether certain lands are or are not open to settlement, and whether certain individuals have met the requirements of the several laws providing for the entry of lands? It seems to me that the matter is too plain for argument or elaboration. So radical a change in the relations between the courts and departmental branches of the government cannot be predicated on anything less than an express declaration by the legislative power, and certainly none such is found in the act of congress in question. The mere fact that the act provides that in certain cases suits may be brought against the United States does not tend to show that it was the

purpose of congress to bestow upon the courts the right to interfere by injunction or otherwise with the action of the departments in matters requiring the exercise of judicial, as distinguished from ministerial, duties. The fact that great injury may be caused, not only to the complainant, but to the settlers upon these lands, and to the region in which the lands are situated, by throwing them open to settlement while the title thereto is in dispute, cannot be considered in determining the question presented by this motion. It might not be difficult to convince any one who has any knowledge of the lamentable evils entailed upon the community and the settlers themselves by the action of the land department in throwing open the lands upon the Des Moines river to settlement when the title was in dispute, of the unwisdom of inviting settlers to occupy lands which are claimed under specific grants from the government without first having the question of title determined by the supreme court; but the certainty of the evils resulting from such action on the part of the department cannot be urged as a reason why the court should usurp a jurisdiction not conferred upon it. In the case of *Litchfield* v. *Register, supra,* it was held to be a fatal objection to the bill that the persons asserting their rights as legal pre-emptors were not made parties thereto. Any objection, good upon the final hearing, may be urged against the granting of a temporary injunction; and, as already stated, the individuals seeking to pre-empt the lands in the bill described are named in the bill, but are not made parties thereto, and, as is held in the case just cited, they are in fact the real parties to the controversy. Motion for injunction is therefore refused.