(No. 4418.    April 4, 1927.)

## JACOB STROUP, Respondent, v. O. ZIUS MATTHEWS and ETTA M. MATTHEWS, His Wife, Appellants.

[255 Pac. 406.]

PUBLIC LANDS — SURVEYS — BOUNDARIES—RIGHT OF PATENTEE TO LAND BETWEEN MEANDER LINE AND NAVIGABLE STREAM.

After issuance of patent to particular tract meandering a navigable stream, court may not thereafter exclude patentee from lands shown by subsequently corrected survey to lie between actual stream and originally platted meander line.

APPEAL from the District Court of the Seventh Judicial District, for Payette County. Hon. B. S. Varian, Judge.

Action to quiet title. Judgment for plaintiff. *Affirmed.*

Ira W. Kenward and A. L. Freehafer, for Appellants.

The government has the right to correct its surveys and dispose of land not shown in its original plat and situated beyond the meander line as run by the former survey. (*Moffat v. United States,* 112 U. S. 24, 5 Sup. Ct. 10, 28 L. ed. 623; *Niles v. Cedar Point Club,* 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 174; *Barnhart v. Ehrhart,* 33 Or. 274, 54 Pac. 195; *French Glenn Live Stock Co. v. Springer,* 185 U. S. 47, 22 Sup. Ct. 563, 46 L. ed. 800; *Horne v. Smith,* 159 U. S. 40, 15 Sup. Ct. 988, 40 L. ed. 68.)

The land department has decided that the land in dispute was omitted from the survey of 1868; hence the question involved in this case is *res adjudicata.* (*White v. Whitcomb,* 13 Ida. 490, 90 Pac. 1080; *Gauthier v. Morrison,* 232 U. S. 452, 34 Sup. Ct. 384, 58 L. ed. 680.)

**Publisher's Note.**

Meander line as boundary, see note in 42 **L. R. A.** 510. See, also, 22 **R. C. L.** 286.

See Public Lands, 32 **Cyc.,** p. 801, n. 92, p. 804, n. 30, 31, 32, p. 805, n. 35, 37, 39, 40, 41.

The land department has exclusive jurisdiction of surveys and when any omission, whether by inadvertence, mistake or fraud, is brought to its attention it may cause a resurvey to be made. (*Wilson & Co. v. United States,* 245 U. S. 24, 38 Sup. Ct. 21, 62 L. ed. 128; *Niles v. Cedar Point Club, supra; French-Glenn Live Stock Co. v. Springer, supra; Security Land & Exploration Co. v. Burns,* 193 U. S. 167, 24 Sup. Ct. 425, 48 L. ed. 662; *Chapman & Dewey Lumber Co. v. St. Francis Levee District,* 232 U. S. 186, 34 Sup. Ct. 297, 58 L. ed. 564.)

The government, as the original proprietor, has the right to survey and sell or open to entry any public lands, and the failure of a surveyor to show public lands on an official plat does not estop the government from claiming such lands and disposing of them when called to its attention. (*Whitaker v. McBride,* 197 U. S. 510, 25 Sup. Ct. 530, 49 L. ed. 857; *Jeems Bayou Hunting & Fishing Club v. United States,* 274 Fed. 18; *Security Land & Exploration Co. v. Burns, supra.*)

Ed. R. Coulter, for Respondent.

When the last act in the series essential to the transfer of the title from the United States has been performed, the title has passed from the United States and the power of the land officers to deal with it has passed away. (*United States v. Schurz,* 102 U. S. 378, 26 L. ed. 167; *Iron Silver Min. Co. v. Campbell,* 135 U. S. 286, 10 Sup. Ct. 765, 34 L. ed. 155; *Cosmos Exploration Co. v. Gray Eagle Oil Co.,* 190 U. S. 301, 23 Sup. Ct. 692, 47 L. ed. 1064; *Levey v. Stockslager,* 129 U. S. 470, 9 Sup. Ct. 382, 32 L. ed. 735; *United States v. Stone,* 2 Wall. (U. S.) 525, 17 L. ed. 765; *Bicknell v. Comstock,* 113 U. S. 149, 5 Sup. Ct. 399, 28 L. ed. 962; *Williams v. United States,* 138 U. S. 514, 11 Sup. Ct. 457, 34 L. ed. 1026; *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 35 L. ed. 428; *Moore v. Robbins,* 96 U. S. 530, 24 L. ed. 848; *Rogers Locomotive Machine Works v. American Emigrant Co.,* 164 U. S. 559, 17 Sup. Ct. 188,

41 L. ed. 552; *Chapman & Dewey Lbr. Co. v. St. Frances Levee Dist.*, 232 U. S. 186, 34 Sup. Ct. 297, 58 L. ed. 564; *Michigan Land etc. Co. v. Rust*, 168 U. S. 589, 18 Sup. Ct. 208, 42 L. ed. 591; *Nobel v. Union River Logging R. Co.*, 147 U. S. 165, 13 Sup. Ct. 271, 37 L. ed. 123; *Beley v. Naphtaly*, 169 U. S. 353, 18 Sup. Ct. 354, 42 L. ed. 775.)

A patent regularly issued is conclusive against the government and junior claimants, unless set aside or annulled by some authorized judicial tribunal, and unless otherwise specifically provided by statute. (*Hughes v. United States*, 4 Wall. (U. S.) 232, 18 L. ed. 303; *United States v. Hughes*, 11 How. (U. S.) 552, 13 L. ed. 809; *Meader v. Norton*, 11 Wall. (U. S.) 442, 20 L. ed. 184; *Maxwell Land Grant Case*, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. ed. 949; *Fenn v. Holme*, 21 How. (U. S.) 481, 16 L. ed. 198; *Bagnell v. Broderick*, 13 Pet. (U. S.) 436, 10 L. ed. 235; *Doe v. Winn*, 11 Wheat. (U. S.) 380, 6 L. ed. 500; *United States v. Arredondo*, 6 Pet. (U. S.) 691, 8 L. ed. 547; *Doe v. Winn*, 5 Pet. (U. S.) 233, 8 L. ed. 108; *Gibson v. Choteau*, 13 Wall. (U. S.) 92, 30 L. ed. 534; *Eureka Co. v. Bailey Co.*, 11 Wall. (U. S.) 488, 20 L. ed. 209; *Curtner v. United States*, 149 U. S. 662, 13 Sup. Ct. 1041, 37 L. ed. 890; *Marsh v. Nichols, Shepherd & Co.*, 128 U. S. 505, 9 Sup. Ct. 168, 32 L. ed. 538; *Smelting Co. v. Kemp*, 104 U. S. 636, 26 L. ed. 875; *Smelting Co. v. Ray*, 104 U. S. 657, 26 L. ed. 882; *Spencer v. Lapsley*, 20 How. (U. S.) 264, 15 L. ed. 902; *White v. Burnley*, 20 How. (U. S.) 235, 15 L. ed. 886; *Hoffnagle v. Anderson*, 7 Wheat. (U. S.) 212, 5 L. ed. 437; *Lindsay v. Miller*, 6 Pet. (U. S.) 666, 8 L. ed. 538; *Ballance v. Forsyth*, 13 How. (U. S.) 18, 14 L. ed. 32; *Shaw v. Kellog*, 170 U. S. 312, 18 Sup. Ct. 632, 42 L. ed. 1050; *Johnson v. Towsley*, 13 Wall. (U. S.) 72, 20 L. ed. 485.)

Where lands have been previously disposed of, the department has no jurisdiction to dispose of them, and any attempted conveyance of them by the government is void. After having conveyed the lands by patent the government

loses all jurisdiction over them. (*Davis v. Weibold,* 139 U. S. 507, 11 Sup. Ct. ·628, 35 L. ed. 238; *Vincennes University v. Indiana,* 14 How. (U. S.) 268, 14 L. ed. 416; *New Orleans v. United States,* 10 Pet. (U. S.) 662, 9 L. ed. 573; *Reichart v. Felps,* 6 Wall. (U. S.) 160, 18 L. ed. 849; *Monroe Cattle Co. v. Becker,* 147 U. S. 47, 13 Sup. Ct. 217, 37 L. ed. 72; *Wilcox v. Jackson,* 13 Pet. (U. S.) 498, 10 L. ed. 264; *Leavenworth etc. R. R. Co. v. United States,* 92 U. S. 733, 33 L. ed. 634; *Kansas Pac. Ry. Co. v. Dunmeyer,* 113 U. S. 629, 5 Sup. Ct. 566, 28 L. ed. 1122; *United States v. Fitzgerald,* 15 Pet. (U. S.) 407, 10 L. ed. 785; *Kissell v. St. Louis Pub. Schools,* 18 How. (U. S.) 19, 15 L. ed. 324; *Hastings & D. R. R. Co. v. Whitney,* 132 U. S. 357, 10 Sup. Ct. 112, 33 L. ed. 363; *Armstrong v. Morrill,* 14 Wall. (U. S.) 120, 20 L. ed. 765; *Scott v. Ratcliffe,* 5 Pet. (U. S.) 81, 8 L. ed. 54; *Wisconsin Cent. R. Co. v. Forsythe,* 159 U. S. 46, 15 Sup. Ct. 1020, 40 L. ed. 71; *Wirth v. Branson,* 98 U. S. 118, 25 L. ed. 86; *Frisbie v. Whitney,* 9 Wall. (U. S.) 187, 19 L. ed. 668; *Lytle v. Arkansas,* 9 How. (U. S.) 314, 13 L. ed. 153; *Barney v. Dolph,* 97 U. S. 652, 24 L. ed. 1063; *Stark v. Starrs,* 6 Wall. (U. S.) 402, 18 L. ed. 925; *Simmons v. Wagner,* 101 U. S. 260, 25 L. ed. 910; *United States v. State Investment Co.,* 264 U. S. 206, 44 Sup. Ct. 289, 68 L. ed. 639.)

The general rule is that the meander lines run in surveying fractional portions of public lands bordering upon navigable rivers are run not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream and as the means of ascertaining the quantity of land in the fraction, and which is to be paid for by the purchaser. The body of water whose margin is meandered is the true boundary. (*Railroad Co. v. Schurmeir,* 7 Wall. (U. S.) 272, 19 L. ed. 74; *Shiveley v. Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 38 L. ed. 331; *Jefferies v. East Omaha Land Co.,* 134 U. S. 178, 10 Sup. Ct. 518, 33 L. ed. 872; *Greene v. United States,* 274 Fed. 145; affirmed, *United States v. Lane,* 260 U. S. 662, 43 Sup. Ct. 236, 67 L. ed.

448; *Johnson v. Hurst,* 10 Ida. 308 (see cases cited at p. 319), 77 Pac. 784; *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 488, 24 L. R. A., N. S., 1240; *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47.)

T. BAILEY LEE, J.—Plaintiff, Jacob Stroup, plead that under United States patent of August 19, 1881, he was the owner and entitled to possession of lots 1 and 2 of section 8 in township 8 N., R. 5, W., B. M., in Payette county, with the exception of a small described strip on the north side of said lot 1; that the approved and filed government plat and field-notes of the survey of the same affirmatively show such lots to be meandered by and adjoining the right bank of Snake river, with no land intervening between such meander line and the river bank; that the defendants were in possession of said lands, wrongfully and unlawfully, through violence, force, fraud, stealth, perjury and a combination thereof, withholding the premises from plaintiff after his demand that they vacate. He prayed for possession and the quieting of his title. Defendants admitted their possession, but denied that it was wrongful, alleging that, between the survey meander line and the river bank, there was a considerable body of land omitted by inadvertence, mistake or fraud from the original government survey, which land they took possession of under a state possessory claim filed by the defendant, O. Zius Matthews, on June 11, 1921, in the office of the county recorder of Payette county. They further allege that at the instance of the said defendant the federal government had the land in question surveyed, establishing lots 5 and 6 respectively west of said lots 1 and 2; that such were officially declared open to entry, and that on July 12, 1923, said Matthews applied to make homestead entry thereof, which application was duly accepted, and receipt issued for fees paid. They prayed that plaintiff take nothing by his complaint and that the cause be transferred to the United States district court by reason of the federal question involved. The case not having been transferred, trial was had by the court,

all findings supporting plaintiff's allegations; and judgment and decree in his favor were entered as prayed for. Defendants have appealed.

There is only one point in the case. Can a court after issuance of patent to a particular tract meandering a navigable stream exclude the patentee from lands shown by subsequent corrected survey to lie between the actual stream and the originally platted and certified meander line?

In *Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. ed. 566, the court announced the general rule that:

"When the Land Department has once made and approved a governmental survey of public lands (the plats, maps, field notes, and certificates all having been filed in the proper office), and has sold or disposed of such lands, the courts have power to protect the private rights of a party who has purchased, in good faith, from the government, against the interferences or appropriations of corrective resurveys made by that Department subsequently to such disposition or sale."

This principle was reaffirmed by Justice Holmes in *Kean v. Calumet Canal & Improv. Co.,* 190 U. S. 452, 23 Sup. Ct. 651, 47 L. ed. 1134, in the following language: "The resurvey by the United States in 1874 does not affect the Calumet company's rights. As the United States already had conveyed the lands, it had no jurisdiction to intermeddle with them in the form of a second survey," citing *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 35 L. ed. 428; *Grand Rapids & I. R. Co. v. Butler,* 159 U. S. 87, 15 Sup. Ct. 991, 40 L. ed. 85; *St. Paul & P. R. Co. v. Schurmeier,* 7 Wall. (U. S.) 272, 19 L. ed. 74.

As late as February 18, 1924, in *United States v. State Investment Co.,* 264 U. S. 206, 44 Sup. Ct. 289, 68 L. ed. 639, Justice Sanford declared what seems to be the settled rule, saying:

"The district court did not err in refusing to admit public land surveys made in 1882 as evidence showing the closing of such surveys on the west boundary of the grant, and decisions of the Land Department, holding that its

west boundary was along the line run by Compton. Although the power to correct surveys of the public land belongs to the political department of the government, and the land department has jurisdiction to decide as to such matters while the land is subject to its supervision and before it takes final action (*Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. ed. 566; *Knight v. United Land Assn.,* 142 U. S. 161, 12 Sup. Ct. 258, 35 L. ed. 974; *Kirwan v. Murphy,* 189 U. S. 35, 23 Sup. Ct. 599, 47 L. ed. 698), this power of supervision and correction by the department is 'subject to the necessary and decided limitation' that when it has once made and approved a governmental survey of such lands, and has disposed of them, the courts may protect the private rights acquired against interference by corrective surveys subsequently made by the department . . . . And although the United States, so long as it has not conveyed its land, may survey and resurvey what it owns, and establish and re-establish boundaries, what it thus does is 'for its own information,' and 'cannot affect the rights of owners on the other side of the line already established.' (*Lane v. Darlington,* 249 U. S. 331, 39 Sup. Ct. 299, 63 L. ed. 629.)''

It is contended that inasmuch as the patent conveyed only lots 1 and 2 as designated on the original plat, it cannot operate upon lots 5 and 6 lying west of them beyond the recorded meander line; and that such lands not having been disposed of, the government retained full jurisdiction to resurvey and throw them open to settlement.

In support of this position, counsel cite *Wilson & Co. v. United States,* 245 U. S. 24, 38 Sup. Ct. 21, 62 L. ed. 128, where a resurvey, after patent, was upheld and enforced. In that case the fact was that: "By that survey and the plat and field-notes thereof, it appeared that in sections 22, 26 and 27, there was stated to be a body of water styled a lake which was excluded from the survey by means of a meander line, diminishing to the extent of the excluded area, the acreage surveyed in the sections in question, thereby causing them to become fractional''; whereas, the

land stated to be a lake was in fact not a lake but land that should have been surveyed. Disposing of the question, Chief Justice White, said:

"As a means of putting out of view questions which are not debatable we at once state two legal propositions which are indisputable because conclusively settled by previous decisions.

"First. Where, in a survey of the public domain, a body of water or lake is found to exist and is meandered, the result of such meander is to exclude the area from the survey and to cause it, as thus separated, to become subject to the riparian rights of the respective owners abutting on the meander line in accordance with the laws of the several states. *Hardin v. Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. ed. 428; *Kean v. Calumet Canal & Improv. Co.*, 190 U. S. 452, 459, 23 Sup. Ct. 651, 47 L. ed. 1134, 1137; *Hardin v. Shedd*, 190 U. S. 508, 519, 23 Sup. Ct. 685, 47 L. ed. 1156, 1157.

"Second. But where, upon the assumption of the existence of a body of water or lake, a meander line is, through fraud or error, mistakenly run because there is no such body of water, riparian rights do not attach, because, in the nature of things, the condition upon which they depend does not exist; and upon the discovery of the mistake it is within the power of the Land Department of the United States to deal with the area which was excluded from the survey, to cause it to be surveyed, and to lawfully dispose of it. *Niles v. Cedar Point Club*, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 171; *French-Glenn Live Stock Co. v. Springer*, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. ed. 800; *Security Land & Exploration Co. v. Burns*, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. ed. 662; *Chapman & D. Lumber Co. v. St. Francis Levee Dist.*, 232 U. S. 186, 34 Sup. Ct. 297, 58 L. ed. 564."

As far as this court is concerned, the matter was definitely set at rest by *Johnson v. Hurst*, 10 Ida. 308, 77 Pac. 784, where, in an illuminating opinion, Justice Ailshie anticipated some of the doctrines announced in *Wilson & Co. v. United*

*States, supra,* and discussed and distinguished the "lake, bayou and marsh" cases relied on by appellants, such as *Horne v. Smith,* 159 U. S. 40, 15 Sup. Ct. 988, 40 L. ed. 68; *Niles v. Cedar Point Club,* 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 174, and many others.

In the Hurst case, it appeared that the patented fractional lands as platted on the original survey comprised some 111.38 acres, and that the area situated between the river bank and the meander line comprised at least 160, more than the patent recited as being in the lots 'themselves. Having declared that:

"It is conceded as the general rule of law that the meander line run in surveying public lands bordering upon a navigable river is not a line of boundary, but one designed merely to point out the sinuosity of the bank of the stream, and as a means only of ascertaining the quantity of land in the fraction that is to be paid for by the purchaser, and that the water course, and not the meander line as actually run on the land, becomes the true boundary line,"—

Justice Ailshie concluded as follows:

"A careful examination of all these authorities discloses the fact that in no case considered have the facts been similar to those in the case at bar. In no case called to our attention where the court has refused to allow the grantee's true boundary line to extend to the main stream or water line has it appeared that the strip or tract of land claimed was within the section that contained the fractional lots patented, nor does it appear in any of those cases that the lands were returned as surveyed on all sides of the tract claimed. In other words, wherever it has appeared from the notes and official plats that all the lands within the legal subdivision as directed to be surveyed by the United States statutes have been returned as surveyed and the remainder of those subdivisions is shown to be the waters of a navigable stream, the courts have uniformly held that the grantee to lots or fractional subdivisions abutting on the meander line, takes title to the stream."

Points Decided.

The Hurst case was not only parallel but a much stronger case than the one at bar, for in the latter the patented area is appreciably larger than the tract between the meander line and the river.

The judgment is affirmed.    Costs to respondent.

Wm. E. Lee, C. J., and Givens and Taylor, JJ., concur.